No. 26-1774, 1779

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

STATE OF CALIFORNIA, *et al.*,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants-Appellees,*

STATE OF ALABAMA, *et al.*,

*Intervener Defendants-Appellants,*

Appeal from the U.S. District Court for the District of Massachusetts
(1:26-cv-11581-IT)

## REPLY IN SUPPORT OF STATE APPELLANTS' EMERGENCY MOTION TO STAY

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL
Louis J. Capozzi, III, #1215872
  *Solicitor General*
Graham D. Miller, #1222440
  *Deputy Solicitor General*
J. Michael Patton, 1223909
  *Deputy Solicitor General*
Benjamin S. Gilberg, #1223910
  *Deputy Solicitor General*
815 Olive Street, Ste. #200
St. Louis, Missouri 63101
Tel. (573) 645-9662
Louis.Capozzi@ago.mo.gov
*Counsel for the State of Missouri*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................ii

INTRODUCTION ....................................................................................... 1

ARGUMENT ................................................................................................ 2

   I. State Appellants Are Likely to Prevail on the Merits of Their Appeal. ......................................................................................... 2

      A.  Appellees have not shown standing. ........................................ 2

      B.  Appellees have not shown ripeness. .......................................... 7

      C.  Appellees' challenge to Section 2(a) is doomed on the merits because the President has authority to gather and organize information within the Executive Branch. ........................... 10

      D.  The injunction barring USPS from considering reforms in rulemaking is unconstitutional. ........................................... 12

   II. The Equitable Considerations Weigh in Favor of A Stay. ............ 13

CONCLUSION ....................................................................................... 14

CERTIFICATE OF COMPLIANCE ..................................................... 18

CERTIFICATE OF SERVICE.............................................................. 19

i

# TABLE OF AUTHORITIES

## Cases

*Alaska v. U.S. Dep't of Agric.,*
17 F.4th 1224 (D.C. Cir. 2021) ........................................................5

*Allen v. Milligan,*
146 S. Ct. 1377 (2026) ...................................................................4

*Bennett v. Spear,*
520 U.S. 154 (1997) .......................................................................9

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...............................................................3, 4, 7

*Common Cause v. Trump,*
506 F. Supp. 3d 39 (D.D.C. 2020) ................................................12

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) .......................................................................5

*Frank Martin Sons, Inc. v. John Deere Const. & Forestry Co.,*
542 F. Supp. 2d 101 (D. Me. 2008) ..............................................13

*Georgia v. Meadows,*
88 F.4th 1331 (11th Cir. 2023) .....................................................11

*Jensen v. R.I. Cannabis Control Comm'n,*
160 F.4th 18 (1st Cir. 2025) .......................................................8, 9

*In re Murray Energy Corp.,*
788 F.3d 330 (D.C. Cir. 2015) .....................................................3, 7

*Missouri v. Biden,*
738 F.Supp.3d 1113 (E.D. Mo. 2024) .............................................3

*Nixon v. Adm'r of Gen. Servs.,*
433 U.S. 425 (1977) ......................................................................11

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015) .........................................................................5

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ..............................................................................7

*Trump v. New York,*
  592 U.S. 125 (2020) ..............................................................................8

*Wayte v. United States,*
  470 U.S. 598 (1985) ..............................................................................6

### Statutes

5 U.S.C. § 704 ........................................................................................9

18 U.S.C. § 611.......................................................................................6

52 U.S.C. § 20511....................................................................................6

## INTRODUCTION

In opposing a stay of the District Court's injunction against Executive Order 14399 ("the EO"), Appellees rely on rampant speculation about future federal policies that continue to evolve rapidly before they are finalized and put into effect.  The District Court even admitted that "[t]here are clearly many uncertainties as to how the agencies will ultimately implement the EO, including the source and accuracy of DHS' Confirmed Citizen Lists, and what final rule, if any, will be adopted by the USPS."  Doc. 190 at 10.  In enjoining those evolving, non-finalized policies, the District Court acted without jurisdiction.

The District Court erred.  If and when the challenged provisions of the EO evolve into final agency policies, Appellees can sue then.  In response, Appellees fill their brief with complaints about the practical challenges of filing quick lawsuits to challenge final agency actions.  *See, e.g.*, Appellee Br. 2–3.  Although Appellant States are sympathetic and have frequently faced such burdens themselves, that is merely the inevitable consequence of Article III requiring litigants to wait for an "actual or imminent" injury before suing.

To preserve that foundational limit on the power of federal courts, the Court should enter a stay pending appeal.

## ARGUMENT

### I. State Appellants Are Likely to Prevail on the Merits of Their Appeal.

#### A. Appellees have not shown standing.

Despite the EO not being implemented, Appellees somehow claim that it "injure[s] [them] in multiple significant ways." Appellee Br. 14. *First*, they claim that Section 3 of "the EO burdens [their] sovereign interests by interfering with their ability to carry out state laws regarding mail voting and voter eligibility," "effectively requir[ing] States to seek USPS' approval" to allow for mail-in or absentee ballots. *Id.* at 14–15. In particular, Appellees claim that the EO "require[s] [them] to expend time and resources now to prevent—to the extent possible—chaos, confusion, and disenfranchisement when defendants rush to finalize untested election protocols on the eve of the upcoming midterms." Appellee Br. 15 (emphasis omitted).

This is legally erroneous. Neither the EO nor USPS's proposed rule require States to do *anything*. *See* State Appellant Br. 12. Only a final rule—which follows notice-and-comment procedures—could impose any

2

injury on Appellees. *See In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015). At best, Appellees are taking what they deem to be necessary prophylactic actions to prepare for *anticipated* future action. *See* Appellee Br. 15. But in *Clapper v. Amnesty Int'l USA*, the Supreme Court rejected a virtually identical argument. *See* 568 U.S. 398, 415 (2013). There, alleging fear of future unlawful surveillance, the plaintiffs expended resources and took various steps to avoid such surveillance. *Id.* The Supreme Court held that plaintiffs could not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416.

*Clapper*'s rule applies clearly in this case: Appellees must wait for Section 3 of the EO to be transformed into a final agency policy. *See Murray*, 788 F.3d at 334. If the federal government attempts to implement substantial changes to mail voting shortly before the upcoming 2026 elections, Appellees can seek emergency relief in the district court. Appellant States are sympathetic to the inconveniences of having to file quick lawsuits against final agency actions. *See, e.g.*, *Missouri v. Biden*, 738 F.Supp.3d 1113, 1127 (E.D. Mo. 2024) (noting final rule was published in challenge alleging lack of statutory authority for

3

planned actions by Executive Branch).  But that is what Article III requires.  *See Clapper*, 568 U.S. at 414 n.5.[1]

Appellees seemingly urge an exception to Article III's imminent injury rule for executive orders and proposed rules when the Court thinks the final rule will be identical to initial proposals.  Appellee Br. 2, 17.  Appellees offer no authority for that notion—which is foreclosed by *Clapper*.  *See id.*  And regardless, the shoe does not fit here.  Already, the proposed rule is materially different than the one imagined in Appellees' complaint.  For example, while Appellees alleged that the Mail-In and Absentee Participation Lists would be "controlled by USPS," Doc. 65 ¶ 5, the proposed rule leaves control with the States, *see* 91 Fed. Reg. at 32916 ("[S]tates would retain full control over who would (or would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List.").  And given the fact that USPS

---

[1] Appellees suggest the *Purcell* principle might bar an Article III-compliant lawsuit.  Appellee Br. 18, 22–23.  It is hard to know what to make of this self-defeating assertion.  *Purcell*, of course, does not relax Article III's standing requirements.  It limits only the power of *courts* to change election rules close to elections—while leaving the political branches free to do so.  *See Allen v. Milligan*, 146 S. Ct. 1377, 1381 (2026) (per curiam).

*must* consider comments before issuing a final rule, additional important changes are distinctly possible. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Rather than indulging knee-jerk, premature lawsuits, federal courts must wait for finalized agency policies that actually impose imminent injuries. *See Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021).

*Second*, Appellees suggest they will have to divert resources to "educate voters" about the optional State Citizenship Lists envisioned by Section 2(a) of the EO. Appellee Br. 15. But this resource-diversion theory of standing is foreclosed by the Supreme Court's decision in *FDA v. All. for Hippocratic Med.* 602 U.S. 367, 394 (2024). And even putting aside that problem, as previously explained, this theory of injury requires rampant speculation, including that the State Citizenship Lists will be inaccurate, that election officials in Appellee States will use this *optional* resource to prevent eligible voters from voting, and that citizens will respond to the "chaos" by turning to Appellee States. *See* State Appellant Br. 7–8, 12–13.

*Third*, Appellees also argue that the State Citizenship Lists are not optional to use, despite the EO not mandating any specific uses for them

once transmitted, because Section 2(b) "threatens criminal prosecution of state and local officials." Appellee Br. 12 n.5; *see also id.* at 20–21. But Section 2(b) simply directs the Attorney General to investigate and, as appropriate, prosecute "State and local officials," "individuals," and "public or private entities" who issue ballots to individuals not eligible to vote in a Federal election. It does not mention, let alone require any use of, the State Citizenship Lists. *See* EO § 2(b). Appellees thus cannot show any actual or imminent injury from the enforcement of unchallenged election laws. Nor do they dispute that, under federal and state law, only of age United States citizens can vote and that the provision of fraudulent ballots is unlawful. *See* 18 U.S.C. § 611; 52 U.S.C. § 20511. The simple instruction that the Attorney General enforce these laws therefore does not confer standing.

The directive issued in Section 2(b) is also a matter of federal prosecutorial discretion and is not subject to judicial review. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) ("The decision to prosecute is particularly ill-suited to judicial review."). But even if it were, Article III requires that Appellees must show that the threat of prosecution is credible and imminent by alleging "an intention to engage in a course of

conduct arguably affected with a constitutional interest, but proscribed by a statute." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotations and citations omitted). Appellees have not alleged an intention to violate one of the election statutes under which the President directed enforcement by providing ballots to ineligible voters. They therefore cannot invoke standing on this basis.

*   *   *

Litigants do not have standing to challenge executive orders that merely instruct federal agencies to consider various reforms. Instead, they must wait for proposals to become final rules. *See Murray*, 788 F.3d at 334. By entering a stay, this Court would leave Appellees free to do precisely that.

### B.    Appellees have not shown ripeness.

Whether considered as a matter of Article III standing or prudential ripeness, Appellants lack standing because their alleged harms turn on speculation about future events. *See Clapper*, 568 U.S. at 409–11, 414 n.5. Regarding Section 2(a), Appellees' extensive speculation about how an eventual regulation will operate dooms their case. The Supreme Court in *Trump v. New York* rejected judicial review of a

7

presidential directive where it included the exact caveat of feasibility and legality included in Section 2(a). *See* 592 U.S. 125, 131–32 (2020) (explaining that where "the President qualified his directive by providing that the Secretary should gather information 'to the extent practicable' and [take action] 'to the extent feasible,'" "[a]ny prediction how the Executive Branch might eventually implement this general statement of policy is 'no more than conjecture' at this time.").

In response, Appellees argue that this *Trump* is inapposite because the EO is "far more prescriptive" than the one at issue in 2020. Appellee Br. 16. But this cannot be true where both orders had identical limiting caveats. Like in *Trump*, the implementation of the EO "is riddled with contingencies and speculation that impede judicial review," *Trump*, 592 U.S. at 131, because, in both cases, the details of the final policy are uncertain.

Regarding Section 3(b), Appellees cite *Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18 (1st Cir. 2025) to argue "it is immaterial that the EO directed USPS 'to initiate a proposed rulemaking'" because "defendants' submissions leave no room for doubt that they intend to implement a final rule." Appellee Br. 17 (emphasis omitted) (citation

omitted). There are two problems with this argument. To start, it misses the point. Even if Federal Defendants intend to implement a final rule, it is unknown what the final rule will be. At this time, there is only a proposed rule, and it is black-letter law that litigants cannot challenge proposed rules before finalization. *See* 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

Further, *Jensen* is inapt. There, a cannabis entrepreneur challenged a Rhode Island statute requiring cannabis business license applicants to be Rhode Island residents and to meet other certain criteria. 160 F.4th at 21. The challenge was ripe there because it was certain that the state agency reviewing applications would enforce the statute as required by law. *Id.* at 24–25. Here, USPS is not enforcing a mandatory statute but rather using its discretion to implement a broad outline directed by the EO. As discussed in State Appellants' opening brief, even the proposed rule looks very different from what Appellees assumed in their pleading, *see* State Appellant Br. 16–17, refuting their claim that the EO prescribes a mandatory outcome.

Appellees also argue that their challenge to Section 3(b) is ripe because, absent a stay, "States would need to compile accurate lists of

9

voters registered for mail ballots to transmit to USPS" and "would have to undertake the 'technically challenging task' of comparing USPS' list to their own list of eligible voters."  Appellee Br. 18–19 (quoting Doc. 105 ¶ 50).  But States need to compile accurate lists of voters registered for mail-in ballots regardless of whether they are transmitted to USPS.  Moreover, Appellees' complaint of needing to expend resources to compare their lists to the USPS list was ironically made in their "Statement of Undisputed Facts" over a month before USPS's proposed rule was published.  *See* Doc. 105 ¶ 50.  As it turns out, under the proposed rule, the lists of mail-in and absentee ballot voters provided by the States *are* the USPS Mail-In and Absentee Participation Lists because the lists remain under exclusive State control.  *See* 91 Fed. Reg. at 32916 ("The Postal Service would not change the information provided by the state when compiling the lists.").

> **C.    Appellees' challenge to Section 2(a) is doomed on the merits because the President has authority to gather and organize information within the Executive Branch.**

While the lack of standing to challenge an optional resource is sufficient to grant a stay pending appeal, one final point on Section 2(a) bears emphasis.  Appellees argue that Section 2(a) is ultra vires because

"[n]owhere has Congress authorized the federal government to compile and maintain State Citizenship Lists for determining voter eligibility." Appellee Br. 11 (internal quotations omitted). But they ignore that the President has *inherent* authority to manage information within the Executive Branch's possession—especially when, as here, no statute suggests otherwise. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 441 (1977) (holding the Presidential Recordings and Materials Preservation Act's rules for collecting and archiving presidential materials did not infringe on separation of power principles because "the control over the materials remains in the Executive Branch"). Additionally, compiling citizenship information is obviously useful in helping the Executive Branch enforce other, unchallenged federal laws—which limit voting to U.S. citizens. *See Georgia v. Meadows*, 88 F.4th 1331, 1347 (11th Cir. 2023) (explaining that the President is empowered to act "'in relation to another branch's constitutionally authorized act'—*i.e.*, an act of Congress").

Appellees have no answers to these points. Their insistence that the President must point to *affirmative* statutory authority to compile

11

citizenship information already within the Executive Branch's possession, *see* Appellee Br. 11, is simply a strawman.

### D. The injunction barring USPS from considering reforms in rulemaking is unconstitutional.

As explained in State Appellants' opening brief, the District Court's Injunction violates Article II of the Constitution because it bars the President from supervising agency officials operating within the Executive Branch. *See* State Appellant Br. 17–19.

In response, Appellees note that the injunction does not apply to the President directly. Appellee Br. 14. This ultra-formalist distinction misses the point. It seems obvious that the District Court's injunction bars USPS from *obeying* the President's instruction to engage in rulemaking and promulgate a final rule. Doc. 191 at 35–36. That judicial order effectively bars the President from issuing directions to his subordinates. Indeed, if an agency cannot at least try to implement lawfully a presidential order, the result is judicial overreach that "inappropriately interfere[s] with ongoing action within the Executive Branch." *Common Cause v. Trump*, 506 F. Supp. 3d 39, 45–46 (D.D.C. 2020). The injunction is therefore unconstitutional.

## II.    The Equitable Considerations Weigh in Favor of A Stay

As discussed in State Appellants' opening brief, Appellees can point only to speculative injuries based on non-final agency actions. State Appellant Br. 20. This is best reflected in their opposition brief, which once again hyperbolically gestures at disenfranchisement, chaos, and confusion as purported harm that weighs against a stay. *See* Appellee Br. 25–27. But as explained, these allegations cannot confer standing, *see supra* Part. I.A, and it follows that they cannot be factored against a stay, *see Frank Martin Sons, Inc. v. John Deere Const. & Forestry Co.*, 542 F. Supp. 2d 101, 106 n.5 (D. Me. 2008) ("[S]peculative injury 'does not constitute a showing of irreparable harm.'" (citations omitted)).

On the other hand, the federal government's strong interest in getting a chance to implement executive orders lawfully and the federal courts' strong interest in hearing concrete legal disputes instead of non-final policies weigh in favor of allowing the administrative process to proceed pending appeal. *See* State Appellant Br. 21–22. And with respect to Section 2(a)'s State Citizenship Lists, State Appellants' interest in accessing this *optional* resource surely outweighs Appellees' imagined injury when Appellees can simply choose not to use it.

13

# CONCLUSION

This Court should grant a stay pending appeal.


Date: July 15, 2026

Respectfully submitted,


**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL


/s/ *A. Barrett Bowdre*
A. Barrett Bowdre, 1222562
  *Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

/s/ *Louis J. Capozzi III*
Louis J. Capozzi III, #1215872
  *Solicitor General*
Graham D. Miller, #1222440
  *Deputy Solicitor General*
J. Michael Patton, 1223909
  *Deputy Solicitor General*
Benjamin S. Gilberg, #1223910
  *Deputy Solicitor General*
Missouri    Attorney    General's
Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Graham.Miller@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

14

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst, 1223911
 *Solicitor General*
Jason J. Muehlhoff*
 *Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, 1204350
 *Solicitor General*
Office of the Indiana Attorney
General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/James R. Rodriguez*
James R. Rodriguez, 1223913
 *Assistant Attorney General*
Kansas Office of the Attorney
General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**LIZ MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ Kelsey L. Smith*
Kelsey L. Smith, 1214635
 *Deputy Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
Telephone: (225) 428-7432
smithkel@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan, 1208173

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett, 1218826

15

*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II, 1223914
*Solicitor General*
Office of the Attorney General of
Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH    CAROLINA    ATTORNEY
GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate, 1209409
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn, 1220093
*Assistant Attorney General*
South Dakota Office of the Attorney
General
1302 East SD Highway
1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

/s/ *David Bryant*
David Bryant, 1222544
*Senior Special Counsel*
Office of the Attorney General of
Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

16

Email:                                    david.bryant@oag.texas.gov
grant.flynn@state.sd.us


/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org


\* *Pro hac vice forthcoming*

17

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,590 words. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Century Schoolbook typeface.

*/s/ Louis J. Capozzi, III*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Louis J. Capozzi, III*