Nos. 26-1774, 26-1779

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEVADA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WISCONSIN; JOSH SHAPIRO, in the official capacity as Governor of the Commonwealth of Pennsylvania,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in the official capacity as president of the United States; UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, in the official capacity as Acting U.S. Attorney General; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in the official capacity as Secretary of the United States Department of Homeland Security; UNITED STATES SOCIAL SECURITY ADMINISTRATION; FRANK BISIGNANO, in the official capacity as Commissioner of the United States Social Security Administration; UNITED STATES POSTAL SERVICE; DAVID STEINER, in the official capacity as Postmaster General and Chief Executive Officer of the Postal Service; DOUG TULINO, in the official capacity as Deputy Postmaster General, Chief Operating Officer and Chief Human Resources Officer of the Postal Service and Member of the Postal Service Board of Governors; AMBER MCREYNOLDS, in the official capacity as Chair of the Postal Service Board of Governors; DEREK T. KAN, in the official capacity as Vice Chairman of the Postal Service Board of Governors; RONALD STROMAN, in the official capacity as a Member of the Postal Service Board of Governors; DANIEL TANGHERLINI, in the official capacity as a Member of the Postal Service Board of Governors,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Massachusetts

---

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

---

BRETT A. SHUMATE
*Assistant Attorney General*
ERIC D. McARTHUR
  *Deputy Assistant Attorney General*
BRAD HINSHELWOOD
LAURA E. MYRON
JENNIFER L. UTRECHT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

      I.       The Government Is Likely to Succeed on the Merits Because the
              District Court Lacked Jurisdiction .................................................................3

      II.     The Equitable Factors Favor a Stay. ..............................................................9

CONCLUSION ...................................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

Plaintiffs' response to the government's stay motion fundamentally mischaracterizes Executive Order 14,399, 91 Fed. Reg. 17,126 (Mar. 31, 2026) (EO or Order). As is evident from the text, the Order is not self-executing, nor does it change the rules of any election. Instead, it directs the Department of Homeland Security (DHS) and the United States Postal Service (USPS) to undertake policymaking, the outcome of which is not dictated by the Order. Indeed, the Order contains repeated and important qualifications that any actions taken be "feasible and consistent with applicable law," EO §§ 2(a), 4(c), 3(b)(iv), 7(b), and deliberations remain ongoing within the Executive Branch regarding what future steps to take, *see* Dkt. 190, at 10 ("There are clearly many uncertainties as to how the agencies will ultimately implement the EO . . . .").

The district court's injunction improperly prejudges the outcome of this deliberative process. Plaintiffs cannot demonstrate that they suffer any particularized injury from ongoing policymaking deliberations. As their response demonstrates, plaintiffs' only alleged harms stem from concerns about agency actions that do not exist and might never exist in the form plaintiffs speculate. Under these circumstances, well-established principles of standing and ripeness require courts to "[l]et[] the Executive Branch's decisionmaking process run its course." *Trump v. New York*, 592 U.S. 125, 134 (2020) (per curiam) (quotation omitted); *Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635, 2635 (2025) (Sotomayor, J., concurring); *DSCC v. Trump*,

No. 26-cv-1114, 2026 WL 1487833 (D.D.C. May 28, 2026) (denying preliminary injunction in parallel challenge to the EO).

Plaintiffs' mistaken assertion that the federal government has not defended the merits of the EO only demonstrates that their claims are not ripe.  The EO directs agencies to take action consistent with applicable laws, and we have defended throughout this litigation the lawfulness of that directive.  There are indeed lawful steps the agencies can take, and even if there were *no* lawful or feasible way to implement the President's directives, the EO tells the agencies not to proceed.  But we have not (and cannot) defend the legality of hypothetical future agency actions that do not exist; we do not know what those actions will be, and any opinion addressing their legality would be purely advisory.

While agency actions to implement the EO may be subject to challenge if and when they are finalized, the federal defendants are irreparably harmed by *this* permanent injunction, which, absent a stay, will prevent them from completing the necessary administrative procedures and processes to achieve implementation of the EO for the November 2026 election, even if they are successful on appeal.

## ARGUMENT

**I.    The Government Is Likely to Succeed Because the District Court Lacked Jurisdiction.**[1]

Our stay motion demonstrates (at 7-17) that well-established principles of standing and ripeness counsel in favor of a stay. As the district court acknowledged in dismissing as premature plaintiffs' challenges to the EO regarding elections occurring after November 2026, "[t]here are clearly many uncertainties as to how the agencies will ultimately implement the EO, including the source and accuracy of DHS' [State] Citizenship Lists, and what final rule, if any, will be adopted by the USPS." Dkt. 190, at 10. That same reasoning demonstrates that the district court lacked jurisdiction to issue this injunction; it is no less "uncertain[] . . . how the agencies will ultimately implement the EO" as to the November 2026 election. Dkt. 190, at 10. Contrary to plaintiffs' suggestion (Resp. 21-23), this is not just a "prudential" ripeness problem, but a jurisdictional one: as both a constitutional and practical matter, the government cannot defend—and the courts cannot opine on—the validity of agency actions that do not exist, and the critical parameters of which have not been decided.

Plaintiffs' arguments to the contrary fundamentally mischaracterize the EO and further underscore that they do not suffer any particularized injury. For example,

---

[1] Entry of judgment after the notices of appeal does not affect appellate jurisdiction. Because the district court's June 25 order disposed of all of plaintiffs' claims, the notices filed after that order are treated as "filed on the date of and after the entry" of judgment. Fed. R. App. P. 4(a)(2); *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 277 (1991).

plaintiffs claim that Section 3 of the EO "burdens plaintiffs' sovereign interests by interfering with their ability to carry out state laws regarding mail voting and voter eligibility," because the EO "effectively requires States to seek USPS' approval" to use mail-in or absentee ballots.  Resp. 14.

That is not what the EO says.  Section 3 directs USPS to initiate a rulemaking regarding the acceptance and transmission of mail-in and absentee ballots.  Although the EO proposes terms to be included in a Notice of Proposed Rulemaking (NPRM) and sets forth a specific timeline for completing the rulemaking process, EO § 3(b), (d), the content of any final rule is not dictated by the Order.  Rather, like all notice-and-comment rulemaking, any final rule (if and when it issues) will be developed after USPS receives and considers public comments.  *See* 5 U.S.C. § 553.

Under these circumstances, where plaintiffs' concern is with possible "action that the [government] *might* take in the future," "standing and ripeness inquiries both lead to the conclusion that judicial resolution of this dispute is premature."  *Trump v. New York*, 592 U.S. at 133-34.  Plaintiffs attempt to distinguish *Trump v. New York* (Resp. 16-17) by emphasizing that USPS has issued an NPRM that, in plaintiff's view, leaves "no room for doubt" that USPS intends to promulgate a final rule consistent with the terms outlined in the EO.  But the entire premise of notice-and-comment rulemaking is that an NPRM remains subject to change as the agency considers public comments on the proposal.  For this reason, the mere *proposal* of a rule cannot be sufficient to support standing to enjoin issuance of a final rule.  Were it otherwise,

notice-and-comment rulemaking would be a virtual nullity. *See Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013) (holding that plaintiffs are not injured by the initiation of a rulemaking because "Article III standing requires more than the possibility of potentially adverse regulation").

*Jensen v. Rhode Island Cannabis Control Comm'n*, 160 F.4th 18 (1st Cir. 2025), on which plaintiffs rely, is inapposite. In that case, the plaintiff—a California resident—challenged provisions of a Rhode Island statute that required cannabis licensees to be Rhode Island residents and meet certain other requirements to obtain favorable treatment. *Id.* at 21. The fact that Rhode Island had not yet issued regulations implementing the statute did not preclude adjudication because "the text of the Act itself" worked the relevant injury; the plaintiff "must be excluded from obtaining a retail license under any scheme implemented by [the agency]." *Id.* at 25. That reasoning has no application here, because the EO does not dictate the contents of any final rule and there remain genuine uncertainties regarding agency implementation. As in *New York*, "[t]he Government's eventual action will reflect both legal and practical constraints, making any prediction about future injury just that—a prediction." 592 U.S. at 133.

*Trump v. New York* also disposes of plaintiffs' contentions (Resp. 8-13, 16-17) that this dispute is justiciable because—in their erroneous view—there is no lawful way for the agencies to implement the EO. The plaintiffs in *New York* equally asserted that there was no lawful way to carry out the presidential memorandum there,

5

asserting that "the exclusion of aliens on the basis of legal status would contravene" the Constitution's requirement of an enumeration of the "whole number of persons in each State." 592 U.S. at 130 (quotations omitted). As here, however, "the President qualified his directive by providing that the Secretary should gather information 'to the extent practicable' and that aliens should be excluded 'to the extent feasible.'" *Id.* at 131. The Court thus ordered the suit dismissed given the genuine uncertainties about implementation. *Id.* at 132-34.

So too here, the EO's directives are not self-executing. Any policy directives within the EO are qualified by (i) the directive that the Postal Service engage in the deliberative process of notice-and-comment rulemaking, and (ii) repeated instructions that the Order's directives should be carried out only to the extent "feasible" and "consistent with applicable law." EO §§ 2(a), 4(c), 3(b)(iv), 7(b).

The use of such permissive language and repeated disclaimers stand in stark contrast to the birthright citizenship executive order at issue in *Trump v. Barbara*, 609 U.S. __, 2026 WL 1870543 (2026), on which plaintiffs rely, Resp. 12. That order instructed agencies about the President's interpretation of the Fourteenth Amendment and a related statute, Exec. Order No. 14160 § 1, 90 Fed. Reg. 8449, 8450 (Jan. 20, 2025), and directed agencies to implement that interpretation, *id.* § 3. That the order also directed agencies to comply with applicable laws in implementing that interpretation, *id.* § 5, did not allow agencies to second-guess the interpretation itself. The EO here contains no such directive about how to interpret any statute or

6

other provision. Instead, there are "many uncertainties" regarding what actions the agencies will take, Dkt. 190, at 10, which demonstrates that, as in *New York*, plaintiffs' suit is premature, *New York*, 592 U.S. at 133-34; *see also Building & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) ("The mere possibility that some agency might make a legally suspect decision . . . does not justify an injunction against enforcement . . . .").

Plaintiffs urge this Court to ignore these disclaimers as mere "window dressing." Resp. 12. But *New York v. Trump*, 171 F.4th 1 (1st Cir. 2026), on which plaintiffs rely for that proposition, is inapposite. That case concerned a challenge to *specific actions* that agencies had taken to implement a memorandum issued by the Office of Management and Budget. *Id.* at 22 ("[I]t is important to remember that the States challenge *that* action rather than the OMB Memorandum."). This Court held that, on that specific record, the memorandum's direction that it be implemented "to the extent permissible by law" amounted to mere "window dressing." *Id.* at 22-24. Plaintiffs here do not (and cannot) challenge an agency action implementing the EO.

Plaintiffs fare no better in alleging (Resp. 14-15) that they are harmed because they must prepare now for the "chaos" they speculate will ensue after USPS issues a final rule. Courts have never regarded parties' bare assertions that they have spent time and energy taking anticipatory steps to comply with possible future regulation as rendering otherwise nonjusticiable controversies capable of resolution. Virtually any party concerned about any future government action—including proposed legislation

7

being considered in Congress—could assert the same, but the Supreme Court has repeatedly held that plaintiffs cannot manufacture a cognizable injury *now* by incurring costs to guard against potential *future* injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 410 (2013); *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024).

Finally, plaintiffs make no real effort to identify a particularized harm from Section 2(a) of the Order. Nor could they: the EO does not require States to do anything with State Citizenship Lists if and when they are transmitted. Plaintiffs assert that they fear prosecution if they do not use the Lists. Resp. 12 n.5. But nothing in the EO threatens prosecution based simply on not using the Lists. The EO instead simply directs officials to prioritize "the investigation, and as appropriate, the prosecution of" individuals "who issue Federal ballots to individuals not eligible to vote in a Federal election" under existing federal law. EO § 2(b).

In short, as another district court observed in denying a preliminary injunction, the EO "does not itself regulate voter registration or how mail-in or absentee ballots will be transmitted," and "whether the government's actions under the Order are lawful or unlawful will depend on how" the Postal Service and DHS "decide to implement the Order, not on the Order itself." *See DSCC*, 2026 WL 1487833 at *11-12. Because "[a]t present, this case is riddled with contingencies and speculation that impede judicial review," *Trump v. New York*, 592 U.S. at 131, the government is likely to succeed on the merits.

## II.    The Equitable Factors Favor a Stay.

As established in our stay motion (at 18-20), the injunction irreparably and impermissibly inhibits the President's ability to oversee the Executive Branch by improperly barring agencies from implementing his policymaking directives in plaintiff States before the November 2026 general election. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation omitted)).  Further, in the absence of a stay, there will not be sufficient time to implement any USPS rule or any DHS portal before the November 2026 election, because implementing those actions will require certain steps be taken well before November 3, 2026. *See* Dkt. 194-1, at ¶¶ 8, 10 (Mayhew Decl.); Dkt. 194-2, at ¶¶ 4-5, 7 (Monteith Decl.).

Plaintiffs urge (Resp. 23) that the injunction does not prohibit the agencies from taking steps to implement the EO for elections after November 2026 or from implementing the EO for this year's elections in non-plaintiff States.  But that wholly misses the point: the irreparable harm to the defendants is the inability to implement the EO as to the November 2026 election.  That is what the district court enjoined, and if the agencies are unable to take implementation steps that are required well before November, they will be effectively deprived of relief even if they ultimately prevail in a highly expedited appeal.

9

These harms are no less substantial merely because another court has entered a preliminary injunction against USPS' implementation of the proposed rule. *NAACP v. USPS*, 2026 WL 1893762 (D.D.C. July 1, 2026), *appeal docketed*, No. 26-5257 (D.C. Cir.). The government has likewise sought a stay pending appeal from that order, and courts cannot insulate errors from review simply by multiplying them. Nor do the other suits identified in this Court's July 8 order (or by plaintiffs) bear on the equitable analysis.[2]

Even if those cases did somehow reduce the harm to the government, the balance would still favor a stay, as plaintiffs face no irreparable harm for the same reasons they have failed to show a justiciable controversy. *See DSCC*, 2026 WL 487833, at *13. That is only underscored by plaintiffs' response, which broadly expresses concern that USPS may not be operationally capable of "competently administer[ing] a ballot-verification program." Resp. 26. USPS has not issued a rule creating such a program, and plaintiffs' concerns are, at most, the basis for comments in USPS's notice-and-comment rulemaking process. If and when DHS or USPS takes final action to implement the Executive Order, plaintiffs could, of course, seek relief at that time if they are injured. But at present, they merely seek to prevent

---

[2] In the other cases, district courts in Massachusetts and the District of Columbia have denied injunctive relief; one set of plaintiffs in the District of Columbia has appealed. *See* Order, *League of Women Voters v. Trump*, No. 26-cv-11549, Dkt. 167 (D. Mass. July 13, 2026) (denying preliminary injunction); *DSCC v. Trump*, No. 25-cv-1114, 2026 WL 1487833 (D.D.C. May 28, 2026) (same), *appeal docketed*, No. 26-5193 (D.C. Cir.).

hypothesized harm based on speculation about a series of future contingencies that have not yet come to pass and may never come to pass.

## CONCLUSION

This Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
BRAD HINSHELWOOD
 */s/ Laura Myron*
LAURA E. MYRON
JENNIFER L. UTRECHT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

July 2026

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,599 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

/s/ Laura E. Myron
LAURA E. MYRON

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Laura E. Myron
LAURA E. MYRON